IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

LOUANE THAMMAVONGSA                                              PLAINTIFF

v.                                    CIVIL NO. 07-2096

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                   DEFENDANT

## MEMORANDUM OPINION

Plaintiff Louane Thammavongsa brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.    Procedural Background:**

Plaintiff protectively filed his application for DIB on August 11, 2004, alleging an inability to work since January 1, 2004, due to degenerative disc disease of the lumbar and cervical spine and pain. (Tr. 14, 51-54). For DIB purposes, plaintiff retained insured status through December 31, 2005. (Tr. 63). An administrative hearing was held on December 5, 2006. (Tr. 290-327).

By written decision dated April 24, 2007, the ALJ found that during the relevant time period plaintiff had an impairment or combination of impairments that were severe. (Tr. 14). However, after reviewing all of the evidence presented, he determined that plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 14). The ALJ found plaintiff retained the residual functional capacity (RFC) to perform sedentary work lifting up to ten pounds frequently, sitting six hours in an eight-hour workday, standing and/or walking two to three hours in an eight-hour workday in one hour intervals; and rarely stooping, crawling, crouching or kneeling. (Tr. 16). The ALJ further found plaintiff must avoid moderate exposure to heights. With the help of a vocational expert, the ALJ determined plaintiff could perform other work as a touch-up screener and a circuit board assembler. (Tr. 17-18).

Plaintiff then requested a review of the hearing by the Appeals Council, which denied that request on July 13, 2007. (Tr. 3-5). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. # 4). Both parties have filed appeal briefs, and the case is now ready for decision. (Doc.# 8,9).

**II.    Evidence Presented:**

At the time of the administrative hearing, plaintiff was thirty-six years of age and obtained an eleventh grade education in Laos. (Tr. 292-293). Plaintiff's past relevant work consists of work as a store clerk and a barber. (Tr. 294). Plaintiff testified that he started working part-time as a barber in 2004, due to pain and numbness in his leg and thighs. (Tr. 298). At the time of the hearing plaintiff testified he continued to work part-time as a barber.

Prior to the alleged onset date the medical evidence reveals plaintiff sought treatment for lumbar and cervical pain. (Tr. 113-117, 168-195, 202-220, 227-248). Dr. Arthur M. Johnson noted that physical therapy and epidural steroid injections had not helped significantly. (Tr. 115). On September 12, 2002, Dr. Johnson opined that surgical intervention was plaintiff's best option. (Tr. 113, 201).

The pertinent medical evidence during the relevant time period reflects the following. On March 26, 2004, plaintiff complained of being dizzy since the previous Monday. (Tr. 122, 253). On December 27, 2004, plaintiff reported it was painful to urinate. (Tr. 118-119).

Plaintiff underwent lumbar spine x-rays on April 28, 2005, that revealed mild anterior wedge or compression deformities at L1 and L2 and mild spurring and minimal disc space narrowing posteriorly. (Tr. 129).

On May 2, 2005, plaintiff underwent a general physical examination performed by Dr. Gordon W. McCraw . (Tr. 130). Plaintiff was not taking any medication at the time of the examination. (Tr. 130). Dr. McCraw noted that the range of motion of plaintiff's spine was normal, and there was no muscle spasm. (Tr. 133). Plaintiff also had normal range of motion of his extremities, with no joint abnormality. (Tr. 133). Examination further showed normal gait and coordination, with no muscle weakness or atrophy, and no sensory abnormalities. (Tr. 134). A limb function examination revealed plaintiff was able to hold a pen and write; able to touch fingertips to palms; able to grip one hundred percent of normal; able to oppose thumb to fingers; able to pick up a coin; able to stand and walk without assistive devices; able to walk on heel and toes; and able to squat and arise from a squatting position.(Tr. 134). Dr. McCraw diagnosed plaintiff with a history of HNP without neuro deficit and depression. Dr. McCraw opined

plaintiff had mild limitations with his ability to walk, stand, sit, lift, carry, handle, finger, see, hear or speak. (Tr. 136).

On May 16, 2005, Dr. R. Crow, a non-examining medical consultant, reviewed the medical evidence and opined plaintiff would be able to perform light work. (Tr. 151-158).

On May 19, 2005, Dr. Brad Williams, a non-examining medical consultant, reviewed the medical evidence and opined plaintiff did not have a severe mental impairment. (Tr. 137-150).

On June 13, 2005, plaintiff was seen by Dr. Von Phomakay. (Tr. 251-252). Plaintiff complained of chronic low back pain with occasional radiation of pain to the left foot. Plaintiff also complained of occasional dysuria. Upon examination, Dr. Phomakay noted tenderness in the lower lumbar area with increased pain with flexion and extension. Straight leg raises were negative at forty-five degrees bilaterally. Dr. Phomakay noted no sensory or motor deficits in plaintiff's extremities and that plaintiff's deep tendon reflexes were 2+ bilaterally. Dr. Phomakay instructed plaintiff on the proper ways of sitting and lifting and discussed physical therapy and an appointment with a neurosurgeon. (Tr. 252).

On September 27, 2005, plaintiff saw Dr. Johnson at the River Valley Musculoskeletal Center. (Tr. 197-199). Dr. Johnson noted that while plaintiff had a disc herniation at L4-5, he did not wish to pursue surgery. (Tr. 197). Plaintiff reported that he was not taking any medication for his pain. (Tr. 197). Examination showed plaintiff to have normal gait and motor strength, no spinal tenderness, and straight leg raising was negative bilaterally. (Tr. 197). Dr. Johnson diagnosed plaintiff with a central disc herniation at the L4-5 level with persistent pain. Dr. Johnson recommended plaintiff undergo a work hardening program to determine his capabilities. (Tr. 198).

Plaintiff underwent physical therapy treatments beginning October 4, 2005, and on October 10, 2005, plaintiff reported that his pain had decreased to a four on a ten scale, and demonstrated an ability to walk a half mile. (Tr. 222-226). On October 18, 2005, treatment notes indicate plaintiff performed all exercises per the flow sheet. (Tr. 221). Plaintiff was to continue with treatment three times a week.

On November 21, 2005, plaintiff sought treatment for heartburn and coughing. (Tr. 250). Dr. Phomakay diagnosed plaintiff with gastritis and prescribed medication.

On June 21, 2006, plaintiff underwent a physical examination performed by Dr. Robert C. Thompson. (Tr.163). Plaintiff reported pain in his lower back radiating into both legs, and neck pain with headaches. (Tr.163). Physical examination showed normal range of motion of plaintiff's cervical and lumbar spine, and normal range of motion of his extremities. (Tr. 163). Straight leg raising was negative, although some decreased sensation was present in the left thigh, calf and heel. (Tr. 163). X-ray testing revealed arthritic changes of the cervical and lumbar spine, and an MRI revealed a moderate herniation at L-4. (Tr. 163). Dr. Thompson completed a medical assessment in which he opined plaintiff could lift ten pounds frequently, and that he could rarely lift up to twenty pounds. (Tr. 166). Dr. Thompson further opined plaintiff could sit for six hours in an eight hour day, and could stand and walk up to three hours per day. (Tr. 166). Finally, Dr. Thompson felt plaintiff should avoid more than moderate exposure to heights, and that he should rarely crouch, kneel, or crawl. (Tr. 166).

AO72A
(Rev. 8/82)

Plaintiff also received chiropractic adjustments and acupuncture treatments from a Mr. Charles Phong Vo from September of 2005, through February 8, 2006.[1] (Tr. 261-289).

### III.   Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

---

[1] We note plaintiff's counsel lists Mr. Vo as a Dr. Charles Vo; however, Mr. Vo is not listed as a licensed medical professional in the state of Arkansas.

6

The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require his to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § 404.1520(a)- (f). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § 404.1520.

### IV.   Discussion:

Plaintiff contends that the ALJ erred in concluding that the plaintiff was not disabled. Specifically, plaintiff alleges the ALJ's analysis as to the evaluation of plaintiff's subjective complaints of pain and credibility was improper, that the ALJ erred in concluding plaintiff maintained an RFC to perform sedentary work; and that the ALJ failed to include all limitations in the hypothetical question proposed to the vocational expert.

AO72A
(Rev. 8/82)

### A.     Insured Status:

In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability. 42 U.S.C. § 416(i)(3)(B). Plaintiff last met this requirement on December 31, 2005. Accordingly, the overreaching issue in this case is the question of whether plaintiff was disabled during the relevant time period of January 1, 2004, his alleged onset date of disability, through December 31, 2005, the last date he was in insured status under Title II of the Act.

In order for plaintiff to qualify for disability benefits he must prove that, on or before the expiration of his insured status he was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death. *Basinger v. Heckler*, 725 F.2d 1166, 1168 (8th Cir. 1984). The medical evidence of plaintiff's condition subsequent to the expiration of plaintiff's insured status is relevant only to the extent it helps establish plaintiff's condition before the expiration. *Id. at* 1169.

### B. Subjective Complaints and Credibility Analysis:

We now address the ALJ's assessment of plaintiff's subjective complaints during the time period in question. In disability determinations, credibility assessments are the province of the ALJ. *Onstead v. Sullivan*, 962 F.2d 803, 805 (8th Cir. 1992). This court will not substitute its judgment for that of the trier of fact, *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996), nor will we disturb the decision of any ALJ who seriously considers, but for good reason explicitly discredits, a claimant's testimony of disabling pain. *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993). While an ALJ may not discount a claimant's subjective complaints solely because the

medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id.* As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart,* 314 F.3d 964, 966 (8th Cir. 2003). We believe the ALJ adequately evaluated the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), and conclude there is substantial evidence supporting the ALJ's determination that plaintiff's complaints were not fully credible.

      The record reflects plaintiff has sought treatment for chronic low back pain and cervical pain stemming from a motor vehicle accident in 1999. Lumbar spine x-rays taken in April of 2005, revealed mild anterior wedge or compression deformities at L1 and L2 and mild spurring and minimal disc space narrowing posteriorly. In May of 2005, Dr. McCraw noted that the range of motion of plaintiff's spine was normal, and there was no muscle spasm. Plaintiff also had normal range of motion of his extremities, with no joint abnormality. Examination further showed normal gait and coordination, with no muscle weakness or atrophy, and no sensory abnormalities. In September of 2005, Dr. Johnson noted that plaintiff had normal gait and motor strength, no spinal tenderness, and straight leg raising was negative bilaterally. Thus, while plaintiff may indeed experience some degree of pain due to his neck and back impairments, we find substantial evidence of record supporting the ALJ's finding that plaintiff does not have a disabling impairment. *See Lawrence v. Chater*, 107 F.3d 674, 676 (8th Cir. 1997) (upholding ALJ's determination that claimant was not disabled even though she had in fact sustained a back injury and suffered some degree of pain). Furthermore, plaintiff also underwent chiropractic care, physical therapy and acupuncture during September of 2005, through February of 2006, that

9

improved his pain. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th cir. 1999) (impairments amenable to treatment not disabling).

Plaintiff's subjective complaints are also inconsistent with evidence regarding his daily activities. At the administrative hearing on December 5, 2006, plaintiff testified that he cut hair three to four hours a day. Plaintiff testified that he could do three to four haircuts, twenty-five to thirty minutes per haircut, before he had get off of his feet. (Tr. 302). Plaintiff testified he usually did four to five haircuts a day. (Tr. 303). Plaintiff testified that he usually missed one day of work due to pain and that normally he worked five days in a week. (Tr. 311-313). Plaintiff testified that he would be able to work if his job required him to be seated most of the day. (Tr. 323). Plaintiff also reported he was able to take his older child to and from school and to care for his younger child until his wife came home from work. (Tr. 92). This level of activity belies plaintiff's complaints of pain and limitation and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a plaintiff's subjective allegations of disabling pain prior to December 31, 2005. *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store).

Therefore, although it is clear that plaintiff suffers with some degree of pain, he has not established that he is unable to engage in any gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning his daily activities support plaintiff's contention of total disability. Accordingly, we conclude that

substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

### C.    RFC Assessment:

Plaintiff also contends that the ALJ erred in finding that he maintained the RFC to perform sedentary work. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). The United States Court of Appeals for the Eighth Circuit has also stated that a "claimant's residual functional capacity is a medical question," *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000), and thus, "some medical evidence," *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam ), must support the determination of the plaintiff's RFC, and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace." *Nevland v. Apfel*, 2 04 F.3d 853, 858 (8th Cir. 2000). Therefore, in evaluating the plaintiff's RFC, *see* 20 C.F.R. § 404.154599(c), while not limited to considering medical evidence, an ALJ is required to consider at least some supporting evidence from a professional. *Cf. Nevland v. Apfel*, 204 F.3d at 858; *Ford v. Secretary of Health and Human Servs*., 662 F. Supp. 954, 955, 956 (W.D. Ark. 1987) (RFC was "medical question," and medical evidence was required to establish how claimant's heart attacks affected his RFC).

In the present case, the ALJ considered the medical assessments of examining agency medical consultants, plaintiff's subjective complaints, and his medical records. Plaintiff's capacity to perform this level of work is supported by the fact that plaintiff's treating and examining physicians placed no restrictions on his activities during the relevant time period that

AO72A
(Rev. 8/82)

would preclude performing the RFC determined. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability). It appears the ALJ used the RFC assessment completed by Dr. Thompson in making his RFC determination. Based on the record indicating plaintiff was able to work part-time, plaintiff's testimony that he would be able to perform a job that allowed him to be seated most of the day, evidence indicating he was able to help take care of his children and do normal activities of daily living and the medical evidence indicating plaintiff could perform sedentary work with some limitations we find substantial evidence to support the ALJ RFC determination.

### D.     Hypothetical Proposed to Vocational Expert:

Plaintiff also contends that the hypothetical question proposed to the vocational expert did not encompass all of plaintiff's limitations. After thoroughly reviewing the hearing transcript along with the entire evidence of record, we find that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. *See Goff v. Barnhart,* 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, we find that the vocational expert's testimony constitutes substantial evidence supporting the ALJ's conclusion that plaintiff's impairments do not preclude him from performing other work as a touch-up screener or a circuit board assembler. *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

### V.     Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision

12

should be affirmed.  The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

DATED this 12th day of June 2008.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)